

**FILED**

Jun 28 2019, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE, JUDITH M. FULFORD |
| Zachary J. Stock<br>Indianapolis, Indiana | William J. Spalding<br>Spalding Law LLC<br>Bloomington, Indiana |
| | ATTORNEY FOR APPELLEE, THOMAS BUNGER |
| | Scott D. Pankow<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cheryl Underwood,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Judith M. Fulford; Thomas Bunger, in his capacity as the Personal Representative of the Estate of Kenneth K. Kinney; and Sheree Demming,<br><br>*Appellees-Defendants.* | June 28, 2019<br><br>Court of Appeals Case No. 18A-PL-1744<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Elizabeth A. Cure, Judge<br><br>Trial Court Cause Nos.<br>53C01-1504-MI-657<br>53C01-1603-PL-471<br>53C01-1711-ES-256 |

**Pyle, Judge.**

## Statement of the Case

[1] This matter involves three consolidated cases initiated by Cheryl Underwood ("Underwood"): two claims against the Estate of Kenneth K. Kinney (the "Estate") seeking contribution for a partnership liability (collectively, the "Contribution Action"); a claim against the Estate for alleged fraudulent transfer of property (the "Fraudulent Transfer Action"); and a petition for sale and partition of the parties' jointly owned real estate (the "Partition Action"). Presently, Underwood appeals the trial court's judgment in favor of the Estate in the Contribution Action and Fraudulent Transfer Action and its retention of funds in the Partition Action. Specifically, Underwood argues that the trial court erred in concluding that she could not recover in the Contribution Action and Fraudulent Transfer Action because the Estate was entitled to both common-law and statutory indemnification for Underwood's wrongful conduct. She further argues that the trial court erred in retaining the proceeds ("Partition Proceeds") from the sale of the parties' jointly owned real estate (the "Partition Sale") even after determining the parties' respective ownership interests. Concluding that the trial court did not err in concluding that the Estate was entitled to indemnification but did err in retaining Underwood's and the Estate's shares of the Partition Proceeds, we affirm in part, reverse in part, and remand.

[2] We affirm in part, reverse in part, and remand.

## Issues

1. Whether the trial court clearly erred in entering judgment in favor of the Estate in the Contribution Action and Fraudulent Transfer Action.

2.      Whether the trial court clearly erred in retaining some of the Partition Proceeds after determining the parties' respective ownership interests.

# Facts

[3]     These parties come before our Court again following a lengthy factual and procedural history spanning nearly two decades. We have detailed this history in two previously published opinions (collectively, the "Demming Litigation"). *See Demming v. Underwood*, 943 N.E.2d 878, 882-83 (Ind. Ct. App. 2011), *trans. denied; Demming v. Underwood*, 40 N.E.3d 887, 891-93 (Ind. Ct. App. 2015). The parties have also been heard by our Supreme Court in a property-division matter (the "Partition Action") also relating to this matter. *See Underwood v. Bunger*, 70 N.E.3d 338, 340-42 (Ind. 2017). The following is a summary of facts pertinent to the issues Underwood presently appeals.

[4]     Sometime in 2002, Sheree Demming ("Demming") retained Underwood, a real estate broker, to help her purchase two properties on East Sixth Street in Bloomington, Indiana (the "Sixth Street Properties"). Instead of facilitating the sale to Demming, Underwood approached Kenneth Kinney ("Kinney") about purchasing the Sixth Street Properties as partners. Ultimately, she and Kinney purchased the Sixth Street Properties for themselves.

[5]     On April 19, 2007, Demming filed suit against Underwood and Kinney asserting claims for breach of fiduciary duty and constructive fraud and requesting the imposition of a constructive trust compelling Underwood and Kinney to convey title of the Sixth Street Properties to her. Demming

ultimately prevailed on her claims and was awarded $154,552.14 in damages (the "Demming Judgment"), for which Underwood and Kinney were held jointly and severally liable. Underwood subsequently satisfied the Demming Judgment on her own.

On November 16, 2014, Kinney passed away. He was survived by his wife Judith Fulford ("Fulford") and the personal representative of his Estate, Thomas Bunger ("Bunger"). In February and March of 2015, Underwood initiated the Contribution Action, demanding equal contribution for any payment made to satisfy the Demming Judgment, as well as equal contribution for any charges, costs, or additional damages arising out of the Demming Judgment.

On April 13, 2015, Underwood filed the Partition Action to petition to compel the partition of other real estate (the "Eighth Street Property") jointly owned by Underwood, Fulford, and the Estate. On March 3, 2016, she also filed the Fraudulent Transfer Action against the Estate, alleging that Kinney had conveyed certain other properties to Fulford in violation of Indiana's Uniform Fraudulent Transfer Act ("UFTA").

On July 15, 2016, the Eighth Street Property was sold at the Partition Sale for $237,000. Once the remaining mortgage amount was satisfied, the Partition Proceeds amounted to $204,284.89. On April 18, 2017, and July 13, 2017, the trial court consolidated the Contribution Action and the Partition Action, respectively, into the Fraudulent Transfer Action.

[9] On December 4, 2017, the trial court conducted a bench trial in the Contribution Action on the issue of whether Kinney holds a right to indemnity from Underwood for any liability resulting from the Demming Litigation, and therefore, whether Underwood was precluded from obtaining contribution toward payment of that judgment. On April 24, 2018, the trial court entered its finding that the Demming Judgment had held Kinney vicariously liable for Underwood's wrongful conduct and that Kinney had committed no independent fraudulent act. The trial court also concluded that Kinney (and now the Estate) had both a common-law right and a statutory right to indemnity from Underwood for the Demming Judgment. The trial court further concluded that its judgment in the Contribution Action rendered the Fraudulent Transfer Action invalid and moot. The trial court issued an order (the "Indemnification Order") that reads, in pertinent part, as follows:

> The Court, being duly advised, now hereby enters judgment in favor of the Estate and against Underwood and finds that the Estate is entitled to judgment on whether Underwood is legally entitled to contribution for any payments toward or expenses for the Demming Judgment. For the aforementioned reasons, [the two claims of the Contribution Action] are invalid as a matter of law and were properly denied.
>
> The Court further enters judgment in favor of the Estate and Fulford and against Underwood on Underwood's Fraudulent Transfer complaint in [] Case No. 53C01-1603-PL-000471. This case is now rendered invalid and moot as a result of Underwood not having any claim in the Estate arising out of the Demming Judgment.
>
> The Court further finds that the ownership interests in the property at issue in Case No. 53C01-1504-MI-000657 were and continue to be disputed by Underwood, the Estate, and Fulford.

> This matter will be addressed at a later date in that action and does not constitute a valid claim in the Estate.

(App, Vol. 2 at 43-44).

[10] Subsequently, on June 21, 2018, the trial court issued an order (the "Partition Order") determining the parties' respective interests in the Partition Proceeds as follows: fifty percent (50%) to Underwood; twenty-five percent (25%) to Kinney (and now the Estate); and twenty-five percent (25%) to Fulford. Also within the Partition Order, the trial court authorized the disbursement of Fulford's share but ordered that the remaining shares be held by the clerk until further order.

[11] Underwood now appeals both the Indemnification Order and the Partition Order.

# Decision

[12] In both Orders being appealed, the trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). We therefore apply a two-tiered standard of review: we first determine whether the evidence supports the trial court's findings, and second we determine whether the trial court's findings support the judgment. *Anderson v. Ivy*, 955 N.E.2d 795, 800 (Ind. Ct. App. 2011), *trans. denied*. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, *i.e.*, if the record contains no facts or inferences supporting them. *Redd v. Redd*, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009). The party appealing the trial court's judgment must establish that the findings are clearly erroneous. *Anderson*, 955 N.E.2d at 800. The trial

court's findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id*. In reviewing the trial court's findings, we neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Redd*, 901 N.E.2d at 549. We do not, however, defer to the trial court's conclusions of law, which we review de novo. *Anderson*, 955 N.E.2d at 800; *Redd*, 901 N.E.2d at 549.

[13] Here, Underwood does not challenge any of the trial court's specific findings. Rather, she contends that the trial court misapplied the law in two ways: (1) by determining that she was not entitled to recover for her fraudulent transfer claims because the Estate owed her no contribution for the Demming Judgment; and (2) by retaining proceeds from the Partition Sale until the parties' resolved their disputes about ownership interests. We will consider each of her arguments in turn.

## 1. Dismissal of Underwood's Fraudulent Transfer Claim

[14] First, Underwood challenges the trial court's dismissal of her fraudulent transfer claim against the Estate. Specifically, she argues that "the trial court should not have applied common law indemnity concepts to determine whether Kinney (or his estate) was a debtor under Indiana's UFTA. (Underwood's Br. 9). She further argues that Kinney is not entitled to either common-law or statutory indemnification, and therefore she may recover a contribution from the Estate

for the Demming Judgment because she "paid more than her share of the liability." *Id*. at 12. We disagree.

[15] Indiana's UFTA provides, in relevant part that:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation … with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

IND. CODE § 32-18-2-14. The UFTA further defines a "debtor" as "a person who is liable on a claim." I.C. § 32-18-2-2. We have previously held that a defendant cannot logically be held liable for fraudulent transfer under the UFTA if he is not to be held liable for the creditor's underlying claim. *See Four Seasons Mfg, Inc. v. 1001 Coliseum*, LLC, 870 N.E.2d 494, 511 (Ind. Ct. App. 2007) ("There is a logical disconnect between the trial court's decision that FSM *is* liable to Coliseum for its role in the fraudulent transfer but *is not* a debtor to Coliseum.") (emphasis in original). Accordingly, when a UFTA defendant is not a debtor to the plaintiff, dismissal is proper. *See id*.

[16] Here, the trial court's dismissal was proper for precisely that reason. Although Underwood argues that "the trial court applied the wrong legal standard to determine whether the Estate was a debtor under the [UFTA,]" her argument is wholly devoid of any citation to authority for that proposition. (*See* Underwood's Br. at 10-12). Rather, Underwood simply quotes sections of the UFTA and UPA and circularly asserts that she was a creditor under the UFTA

"because she has a right to contribution from [the Estate] arising from Kinney's obligation to contribute to the losses of the partnership." (Appellant's Br. 11). Because Underwood has failed to present a cogent argument that the trial court applied the wrong legal standard to determine whether the Estate was a debtor, we will not consider that assertion on appeal. *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004) ("It is well settled that we will not consider an appellant's assertion on appeal when he has failed to present cogent argument supported by authority and references to the record as required by the rules.") (internal citation and quotation marks omitted).

[17]     Underwood next argues that the trial court erred in finding that the Estate was entitled to common-law indemnity for the Demming Judgment. Specifically, she argues that common-law indemnity is unavailable to the Estate because the former partnership relationship between her and Kinney is to be governed solely by Indiana's Uniform Partnership Act ("UPA"). For the reasons below, we disagree.

[18]     "Generally, the right of indemnification arises only by contract, express or implied, or by statutory obligation." *Rotec, Div. of Orbitron, Inc. v. Murray Equip., Inc.*, 626 N.E.2d 533, 535 (Ind. Ct. App. 1993), *reh'g denied*. "However, a right to indemnity may be implied at common law." *Id.* (citing *Indianapolis Power & Light Co. v. Snodgrass*, 578 N.E.2d 669, 670-71 (Ind. 1991)). "In the absence of any express contractual or statutory obligation to indemnify, such action will lie only where a party seeking indemnity is without actual fault but has been compelled to pay damages due to the wrongful conduct of another for which he

is constructively liable." *Id.* "The obligation to indemnify does not arise until the party seeking indemnity suffers loss or damages[.]" *Indianapolis–Marion Cnty. Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010), *trans. denied.* "In contribution or indemnification cases, the damage that occurs is the incurrence of a monetary obligation that is attributable to the actions of another party." *Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008). *See also Coca–Cola Bottling Co.-Goshen, Ind. v. Vendo Co.*, 455 N.E.2d 370, 373 (Ind. Ct. App. 1983) (explaining that one of the elements of a claim for indemnity is that a claimant "has paid or *been compelled to pay a judgment* recovered by the injured person") (emphasis added); *cf. TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co.*, 542 N.E.2d 1373, 1376 (Ind. Ct. App. 1989) (stating that a party seeking indemnity suffers loss "at the time of payment of the underlying claim, payment of a judgment on the underlying claim, or payment in settlement of the underlying claim"), *reh'g denied, trans. dismissed.*

[19]  Here, Underwood does not dispute any of the trial court's findings supporting its conclusion, specifically that Kinney committed no independent act of fraud but was held constructively liable for Underwood's own wrongful and fraudulent conduct. Instead, she argues only that the indemnification provisions of the UPA preempt any common-law indemnification that would be available to the Estate. Once again, she has failed to present a cogent argument in support of this position; her argument is wholly devoid of any citation to authority to support this assertion. For that reason alone, her argument fails. *See Shepherd*, 819 N.E.2d at 463. Furthermore, the pertinent

section of the UPA governing indemnification does not purport to preempt any common-law rights, but rather expressly preserves all other rights. *See* I.C. § 23-24-1-39 (expressly stating a party's entitlement under that provision is "without prejudice to any other right"). Therefore, based on the specific facts of this case – that Kinney was without actual fault and was compelled to pay damages due to Underwood's wrongful conduct – we conclude that the record before us supports a judgment in favor of the Estate based on a right to indemnification implied at common law.[1] We affirm the trial court's judgment in favor of the Estate in the Contribution Action and Fraudulent Transfer Action.

## 2. Disbursement of Partition Proceeds

[20] Finally, Underwood argues that the trial court erred by not disbursing to her a one-half share of the Partition Proceeds. Specifically, she argues that it was clearly erroneous for the trial court to withhold disbursement of the Partition Proceeds after the parties' ownership interests have been determined. We agree.

[21] INDIANA CODE § 32-17-4-2.5(l) governs the disbursement of proceeds from real property partition sales. It provides, in pertinent part, that "the court shall

---

[1] Underwood also argues that the trial court erred in finding that the Estate was entitled to statutory indemnification. Because we find that the Estate was entitled to common-law indemnification, we need not address this argument.

divide the proceeds of the sale among the remaining owners *in proportion to their ownership interest*." (emphasis added).

[22] Here, the trial court first determined in the Indemnification Order that the "ownership interests in the property at issue in [the Partition Action] were and continue to be disputed by Underwood, the Estate, and Fulford." (App. Vol 2 at 44). Subsequently, in the Partition Order, the trial court determined the following ownership interests in the Partition Proceeds: fifty percent (50%) to Underwood; twenty-five percent (25%) to Kenneth Kinney (and now the Estate); and twenty-five percent (25%) to Fulford. The trial court then disbursed the share belonging to Fulford but retained the remaining shares until further order. It provided no explanation or further findings to support its continued retention of the shares belonging to the Estate and Underwood.[2] For that reason, we do not find that the trial court's findings support its judgment in that regard, *see Anderson*, 955 N.E.2d at 800, and we therefore reverse and remand that part of the Partition Order.

[23] In conclusion, the trial court did not clearly err in finding that the Estate was entitled to indemnification from Underwood for the Demming Judgment and

---

[2] In her brief, Underwood also points to the lis pendens notice filed by the Estate in the Partition Action and argues that the trial court improperly held the notice to be a valid lien against the Partition Proceeds. She cites *Curry v. Orwig*, 429 N.E.2d 268, 273 (Ind. Ct. App. 1981), for the proposition that a lis pendens notice may not be used to secure a personal claim against a party. However, her arguments and reliance on *Curry* are inapposite. Here, the trial court never stated in either the Indemnification or the Partition Order that the Partition Proceeds were being held subject to the Estate's lis pendens notice. Therefore, we need not address Underwood's arguments regarding the doctrine of lis pendens.

entering judgment in favor of the Estate in the Contribution Action and Fraudulent Transfer Action. Accordingly, we affirm the Indemnification Order. However, the trial court did clearly err in the Partition Order, as the trial court's findings (specifically the respective ownership percentages it determined) do not support its continued retention of the respective shares of the Partition Proceeds belonging to Underwood and the Estate. Therefore, we remand for the trial court to disburse the Partition Proceeds according to the parties' ownership interests.

[24] We affirm in part, reverse in part, and remand.

Brown, J., and Altice, J., concur.